UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID A. SOSNE, in his capacity as Chapter 7 Trustee for Premier Bancshares, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:14 CV 1491 RWS |
| FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver for Premier Bank, | ) ) ) ) | |
| Defendant. | ) ) | |

## **MEMORANDUM AND ORDER**

The parties disagree about who owns approximately $3.7 million in federal tax refunds: Premier Bancshares, a holding company that filed consolidated tax returns on behalf of itself and its subsidiary and received the refunds from the IRS, *or* Premier Bank, the subsidiary that claims its operations generated the refunds. Plaintiff argues that a Tax Sharing Agreement between Bancshares and the Bank ("the TSA") unambiguously shows the two established a debtor-creditor relationship in regards to the refunds, meaning the refunds are part of Bancshares' bankruptcy estate and the Defendant has only a creditor's claim against the estate. Defendant argues Bancshares and the Bank established an agency or trust relationship in regards to the refunds, meaning the Bank owns the refunds and the

refunds are not part of Bancshares' bankruptcy estate. Both parties have filed motions for summary judgment. Because neither party has shown it is entitled to summary judgment, I will deny both motions.[1]

Briefly, the major events leading to this dispute are as follows: in 1996, Bancshares and the Bank executed the TSA and began filing consolidated federal income tax returns. In 2010, the Missouri Division of Finance closed the Bank and the FDIC was appointed as its receiver. Between 2010 and 2013, the IRS issued the group about $3.7 million in tax refunds. The refunds were attributable to the Bank's operations.[2] Bancshares did not pay the refunds to the Bank. In 2014, Bancshares filed for bankruptcy.

Bancshares' Chapter 7 trustee filed a complaint in Bankruptcy Court, requesting a judgment declaring that the refunds are property of Bancshares' bankruptcy estate. The FDIC answered and filed counterclaims for: (1) a judgment declaring they own the refunds; (2) recognition of a resulting trust; (3) imposition of a constructive trust;[3] (4) conversion; and, (5) unjust enrichment. I granted the FDIC's motion to withdraw the reference from Bankruptcy Court, which the

---

[1] Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Med. Ctr., 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)).

[2] The Trustee admits the refunds were attributable to the Bank's operations only for the purposes of the FDIC's summary judgment motion.

[3] I note that a constructive trust is a remedy, not an independent cause of action. See Secure Energy, Inc. v. Coal Synthetics, LLC, 2010 WL 1691184, at *3 (E.D. Mo. Apr. 27, 2010).

Trustee did not oppose, and both parties moved for summary judgment. The Trustee requests summary judgment on his complaint and Counts I–V of the FDIC's counterclaim, while the FDIC requests summary judgment only on its Counts I and II.

Some courts have held that in the absence of a contrary agreement, a parent filing consolidated tax returns holds refunds attributable to a subsidiary's operations as an agent or in trust for the subsidiary. See, e.g., In re Bob Richards Chrysler-Plymouth Corp., Inc., 473 F.2d 262, 265 (9th Cir. 1973); Jump v. Manchester Life & Cas. Mgmt. Corp., 438 F.Supp. 185, 188–89 (E.D. Mo. 1977). Here, the parties had a tax sharing agreement. As a result, I must interpret that contract to determine what Bancshares and the Bank agreed to regarding the ownership or disposition of the refunds.

The parties agree that Missouri law governs. "The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and give effect to that intention." Lafarge N. Am., Inc. v. Discovery Grp. L.L.C., 574 F.3d 973, 979 (8th Cir. 2009) (quotation marks omitted). "If the contract is unambiguous, then the intent of the parties is to be gathered from the contract alone . . . [w]here a contract is ambiguous and unclear, however, a court may resort to extrinsic evidence to resolve an ambiguity." Id. (quotation marks omitted). "A contract is

ambiguous when it is reasonably susceptible to different constructions." Id. (quotation marks omitted).

The TSA includes provisions addressing distribution of refunds, but the TSA does not address ownership of the refunds. See In re BankUnited Fin. Corp., 727 F.3d 1100, 1107 (11th Cir. 2013). Some of the TSA's characteristics, such as the lack of creditor protections and the requirement that Bancshares pay the Bank its refunds within five days of receipt from the IRS, suggest that the parties did not intend to transfer ownership of the Bank's refunds to Bancshares, but rather intended that Bancshares hold the money as an agent or in trust and not as a debtor. See FDIC v. AmFin Fin. Corp., 757 F.3d 530, 535 (6th Cir. 2014); BankUnited, 727 F.3d at 1108. Other characteristics of the TSA, such as the lack of escrow requirements or use restrictions on the refunds while in Bancshares' control and Bancshares' obligation to pay the Bank different amounts than what it received from the IRS in some circumstances, suggest that the parties created a debtor-creditor relationship and not an agency or trust relationship. See, e.g., In re Vineyard Nat'l Bancorp, 508 B.R. 437, 442–43 (Bankr. C.D. Cal. 2014); cf. Driver v. Alliance Oncology, LLC, 2015 WL 4254392, at *2–3 (W.D. Mo. July 14, 2015).

Because the TSA does not address ownership of the refunds and contains provisions that could reasonably be construed as creating a debtor-creditor or agency or trust relationship, it is ambiguous. The FDIC argues as much, but the

Trustee disputes much of the FDIC's extrinsic evidence, and the available, undisputed evidence does not conclusively resolve the ambiguity. I must deny both parties' motions for summary judgment seeking a declaration of who owns the refunds in light of their agreement. See Lafarge, 574 F.3d at 979. The resolution of the FDIC's other claims also depends on interpretation of the parties' agreement. As a result, I will also deny both parties' motions for summary judgment on those counts.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Sosne's motion for summary judgment on his Complaint and on Counts I–V of Defendant FDIC's Counterclaim [17] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant FDIC's motion for summary judgment on Counts I and II of its Counterclaim [27] is **DENIED**.

                                     _/s/ Rodney W. Sippel_
                                     RODNEY W. SIPPEL
                                     UNITED STATES DISTRICT JUDGE

Dated this 29th day of February, 2016.